and the next case on the calendar is number 203080 United States v. Pikus. We'll hear from Mr. Rubin. Yes, good morning. May it please the court, my name is Aaron Rubin and I represent the appellant. Thank you, counsel. We'll take the case under advisement. Thank you. And the next case on the calendar is number 203080. We're hearing someone else, I think. There's an echo, I think, from our recorded. Okay, let's try it again. Sorry about that, Mr. Rubin. Sure. May it please the court, my name is Aaron Rubin and I represent the appellant Alexander Pikus. And with the court's permission, I would like to reserve one minute for rebuttal. I was the attorney of record at the outset of this case in the district court. And from the summer of 2016, when the indictment was filed, to the beginning of the trial in October 2019, so that's three and a half years, there was not a single instance when the district court complied with the Speedy Trial Act in excluding time. The Speedy Trial Act, as this court is well aware and has issued many decisions on, imposes strict requirements on the district court on how to make a record in excluding time. And you're Mr. Rubin, what more should the district have said and when? Well, I think the case law is clear that the record should be made contemporaneous with the adjournment. There are certain exceptions to that, that have been carved out, maybe remedying an instance where the reasons are not put on the record, it might be able to supplement those reasons in its decision on a motion to dismiss, which was not done here as well. But the ends of justice analysis and the language that is in the statute was never referenced. The significance of that is not just the language and the administrative hurdle or obligation on stating something just for language sake. The purpose of the statute is to require the district court to actually perform an analysis, an analysis that weighs the ends of justice interests of the defendant, of the government, of the public, of the court. And that is the reason for those words to be put on the record. So I have two questions for you. The first one is, at various times, the district court in fairly summary fashion, cited ongoing negotiations. Was there anything before the district court about ongoing negotiations? There were actually no negotiations going on during this case. And so, and I do... Any basis for his making that finding? That was just words that were used without any basis. I don't believe anyone had even informed the court that any negotiations were happening. But the basis of ongoing negotiations was used not every time. I think there were a few times where that was referenced. But even those times, there were no negotiations. And frankly, there was no offer even made by the government in this case. And my other question is, there is a suggestion that the reason for all these delays was that you wanted these audit documents, and it was taking the government forever to get them. So, assuming that's true, why aren't you responsible for the delays? In the sense of that you were very clear that you absolutely wanted these documents. Your Honor, we certainly did want those documents. And at the outset, we proposed subpoenaing those documents ourselves. And the government was directed to produce those documents. Now, those documents, we had argued, were central to our defense. And the delay was heavily disputed as to the reasons. We accused the government of intentionally withholding the documents, or maybe not preserving the documents. Now, we're not here to but the issue is that no one resolved the question. And the purpose of the delay, if the government was withholding the documents for three years, why weren't they produced? The problem is that there was no record made. We are here not to resolve what happened to the documents, or whose fault it is, because I'm sure the government has their view on it. The problem is no record was made. And that is the purpose of the Speedy Trial Act to make that record for appellate review. So now we're here with no record. And ironically, we spent three years trying to get these documents. And then three days before the trial, the district court makes a purely legal ruling that could have been made at any time, saying that the documents and entire defense is not relevant and is not permissible anyway, not based on what was in the documents, or whether the documents were to be turned over or not. And if I recall correctly, his ruling was that the government could not introduce these documents. But it was you who wanted to introduce these documents, right? Judge Rakoff, that's entirely correct. But that ruling came about when we made a motion for sanctions, because we accused the government of not complying and not producing the documents. As a result, and to determine that issue, the district court precluded us from using the documents, precluded anyone from using the for, we will not know. The pattern of this court issued a recent decision in 2016, which we cite in our papers, United States v. Burt, which cited probably the central consideration when looking at a motion to dismiss or the speedy trial violation, and whether that dismissal was going to be with prejudice. The central most influential consideration is whether there was a pattern of neglect by either the government or the court. Here, there was a pattern of neglect by both. We raised the speedy trial issue in 2017, at the end of 2017. This is years before the trial. The government, this was after about 500 days, had elapsed of time that was clearly not properly excluded. The government could have conceded and just re-indicted the case then. But they doubled down. Our motion was summarily denied with no case law. The government did not cite any case law at that point to dispute our speedy trial motion. But we continued. We brought a mandamus to this court, which was denied because it was premature, because the speedy trial should be after the conclusion of the case, which we accept. But the government and the district court were certainly on notice that we were taking up this issue. The practice continued after that for years, the practice of not excluding time, even after we heavily litigated this. I see my time has expired. But we are asking this court to dismiss this case on the grounds of a speedy trial violation with prejudice, according to the tenants in your decision, United States v. Burt, for a pattern of neglect. Thank you, counsel. You've reserved a minute for rebuttal. We'll hear from the government. Mr. Glaser. Yes. May it please the court, William Glaser for the United States. I'm sorry, my video stopped. There we go. May it please the court, William Glaser for the United States. The district court made the findings required under the Speedy Trial Act in this case, at least by the time of ruling on the motion to dismiss. I think it's important to remember that there were five defendants. What were the rulings? What grounds did the court give? Your Honor. Yeah, go ahead. Sure. The court gave the grounds of complexity. Yeah, now let's stop right there. You think that complexity can justify a three and a half year delay under the Speedy Trial Act? I don't really think this case was particularly complex. But let's assume that was the finding of the court that we did not detail it in any way, shape, or form. But that might justify putting it off for six months. This is three and a half years. Your Honor, we don't dispute that the delay in this case was long. It was certainly longer than the government preferred. As with respect to complexity, though, the district court's initial determination that the case was complex was based in part on the fact that there were five defendants in this case. And I think that actually also addresses Judge McOsker. Can you point us to the most fulsome explanation by the court of its rationale for excluding time? So you can start with complexity and direct us to what specifically was spelled out about the complexity of the case. Yes, Your Honor. The places I would direct you to would be found at pages 347 of the appendix, which was the ruling on the motion to dismiss the indictment, and page 98 of the appendix. Page 88 is also helpful. That was the magistrate's judge's initial determination of complexity. And the government will freely confess that the district court's findings were not extensive. They were perhaps not as detailed. Yeah, I'll look at those pages afterwards. But can you just tell me a preview of what those say? I can see much more than buzzwords. Right, Your Honor. So on June 29, 2016, this is at page 98, the district court said, complex case and also for negotiations, time is excluded. Very curt, very brief. That's the most detail you're offering. That was the very earliest exclusion, or one of the earliest. So that says nothing about the later exclusions. Right. So at page 347, when ruling on the motion to dismiss the indictment, page 347 of the appendix, the court said, the court designated this case complex on June 29, 2016. The court excluded time on that basis and because of ongoing negotiations. And then the court went on. At each subsequent status conference, the court continued to exclude time based on the complexity of the case, pending motions and ongoing negotiations without objection from any party. We're not here to say. A question about when it says there, the court designated the case as complex. Is that just referring to what you read previously, complex case and also for negotiations, that phrase, that's the designation? Your Honor. Yes, that's the district court's designation. Although I do think the magistrate judge's statements on page 88 of the appendix, also finding that it would be in the interest of justice to exclude time, also supported that complexity determination. And to return to Judge Rakoff's question, I don't think this case was necessarily conceptually complex, but there were five defendants in this case. I think that also helps address Judge Rakoff, your concern about ongoing negotiations. There were in fact, guilty pleas of the co-defendants up until less than two months before trial in this case. And at least two times on the record, the government did indicate to the district court that negotiations were ongoing and the government hopes to have a resolution with respect to some defendants. So with respect to Mr. Rubin, I don't think- But that would be a basis for excluding time as to this defendant. Only if the court made a ruling that a severance was not appropriate or whatever, he would have had to explain, oh, by ongoing negotiations, which I say in two words and no more, I'm not referring to this defendant at all. I'm referring to other defendants. And then, had he said that, then Mr. Rubin could have asked for a severance or whatever, but that none of that ever occurred, correct? That's correct, your honor. Mr. Rubin did not request a severance. And I think that's actually important in that the district court wasn't put notice that it needed to essentially engage in the severance analysis in this case. No one at any point disputed that the defendants were properly joined. So again, we're not saying that- Forgive me, I keep interrupting and I apologize. The speedy trial right is individual. Just because there may be a basis for postponing the trial with respect to some other defendant, you have yourself a speedy trial right, unless the court affirmatively makes a finding that this case has to be tried all in one ball of wax. True? Your honor, it's definitely the case that you have an individual right. I'm not sure that the case law specifically says that a court must make a speedy trial finding with respect to each individual defendant in a multi-defendant case. But I think to just taking the premise here that it's just Mr. Pekus' rights that are at issue, it was him, it was his counsel that sought the audit records that led to essentially all of the delay in this case. So initially he requested the audit records at the end of 2016 in December. And initially the government said, we'll attempt to- Well, let's talk about that. He first asked for a subpoena, which he could then have sought to enforce in a speedy fashion. Correct. The district judge, as near as I can tell, sui sponte, but in any event, the district judge said, oh no, it's just a phishing expedition. Even though defense counsel had laid out and repeatedly laid out over the next three years, the very specific reason why he needed this for his defense. Then the government said, okay, don't worry. We'll voluntarily work to get those documents. And the government took, what, three years to do that. So your honor, to be clear, with respect to the government, it was not the prosecution team. So the components that led to the delay here were various state and federal entities and contractors that were responsible for auditing a variety of Medicare and Medicaid billers. But wait a minute, it was you, that is to say the U.S. attorney's office for the Eastern District of New York, that said to the court early on, we will work to get the defense, these documents, absolutely. At that point, if not earlier, but certainly at that point, it became your responsibility. Your honor, it did to the extent that we submitted requests to 33 of these different entities on Mr. Pekus' behalf, requesting all potentially relevant documents. It became clear about four months later that a subpoena was going to be necessary for two of the New York entities. The government called that to Mr. Rubin's attention. He obtained the subpoenas from the district court. The response to the requests by the government and to the subpoenas was frankly, disappointingly slow. And again, when trial was about to proceed in 2018, the defense sought additional subpoenas for, they were aimed at HHS, but it was really for some of the not like how long this took to come to trial, but the reason for the delay in this case, and the reason that the district court's findings of complexity and findings that, although brief, that time was properly excluded under the Speedy Trial Act, were based on the defense's attempt to obtain these audits that he thought might contain exculpatory or otherwise helpful Let's talk about that because he makes the argument that this was Brady material and therefore you had an affirmative duty to speedily obtain these. You could come back to the court and order these various entities to produce the documents, but you didn't. And why isn't it Brady? His whole defense, as I understand it, was that his client had looked at these audits and had concluded from that, that there was no fraud involved. And so it was a good faith defense in effect. And critical to that was the corroboration that he believed the audits would show. So why wasn't it Brady? So your honor, it wasn't Brady, I think primarily because it wasn't in the possession of the government prosecution team. It was in the possession of a wide variety of contractors and state and federal entities. Some of whom included people who had worked with you on the joint investigation. Yes. Individuals from some of those agencies. I see my time has expired. You can continue. So the second reason would be that the information wasn't material under Brady, that the fact that an entity has survived an audit is not sufficient to show that no fraud was occurring. But that's not the issue. It's a subjective defense, not an objective defense. So he takes a stand. He says, I'm menacing because I thought based on the audits that there was no fraud going on. That's how I viewed it. That was my subjective belief. The response to that could not be, oh, well, you're wrong as a matter of law. The audits don't prove that. The response would have to be either you're lying or you should not, you didn't have a real basis for drawing that inference audits are really inculpatory rather than exculpatory. Either way, he was entitled to the audits. So your honor, I think I would have three brief responses to that. First of all, he hasn't raised a Brady claim on appeal. So the only claim that the court to consider is whether the audits were exclusion of the audits was an abuse of discretion with respect to that issue. It was not an abuse of discretion to exclude audits that he has never proffered. So he failed adequately preserve his claim that they should have been admitted under federal rule of evidence 103 A2. That's my second point. And then the third point would be that there would be no possible prejudice, even under plain error review, because if this court were to consider the claim and the reason is that the, there was overwhelming evidence that fraud was occurring in the clinics that he himself controlled. So even if it were possible that he could rely on audits to say, didn't believe fraud was occurring in some of these other entities for which he was laundering money, there's no possible way he could argue that fraud wasn't occurring in his, in the clinics. He himself controlled specifically because when you consider that he himself bragged about how he was able to quote, beat the audits. Thank you, Mr. Glasser. Um, thank you, Mr. Rubin. Rebuttal. I just would like to note, uh, that there are other issues in the, uh, appeal that we raised, uh, um, that we believe are, uh, certainly compelling, uh, especially, uh, issues, uh, relating to the, uh, money laundering. Uh, uh, but we will, uh, um, uh, unless your honors have any questions, uh, we will rely on our papers, uh, and, uh, um, ask for our appeal to be granted. Judge Robinson, I think you're muted. Yeah, I know. Thank you. Sorry. I do have a question about this issue concerning the evidence relating to the Calveliento clinics. Um, because I'm trying to, I'm trying to wrap my mind around what the argument is, as it stands before us now and how it relates to the arguments that were made before the trial court. I read the arguments before the trial court is focusing on, you shouldn't have admitted this of stuff that happened prior to the statute of limitations when the statute of limitations expired. On appeal, I see the argument focusing on variance from the indictment and the prejudice that you're describing is the same theory of prejudice, but was there ever a challenge, um, before the trial court, did you ever challenge the variance of the evidence is presented from as alleged or seek an instruction relating to that variance? Yes, your honor. We did not, uh, seek such instruction. We, uh, moved in our, uh, post trial, um, briefing before the district court, uh, to, um, um, find that that was, uh, um, more of a sufficiency of evidence that, uh, there was a, uh, that there were two, uh, separate, uh, conspiracies and, um, suggesting that, uh, introduction after hearing the evidence at trial introduction of the first conspiracy, which was timed out would be prejudicial, but that was our argument. Uh, the government raised the, uh, or characterize it as a variance argument, which we hadn't characterized it as, but that was the nature of our argument. I see. Thank you. Thank you, counsel. Um, we'll take the case under advisement.